# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| TERRANCE BASS; BARRY BOYD; ELIZABETH LOPEZ; and JOSEPH SCOTT, individually and on behalf of all others similarly situated, | § § § § § | Case No. |
| Plaintiffs, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| THE CITY OF DALLAS; and JOHN DOES 1-5, | § § § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiff TERRANCE BASS ("Bass"); BARRY BOYD ("Boyd"); ELIZABETH LOPEZ ("Lopez"); and JOSEPH SCOTT ("Scott") (collectively "Named Plaintiffs"), on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"),  by and through their attorneys, ELLWANGER LAW LLLP and VALLI KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief from Defendants, THE CITY OF DALLAS ("Dallas"), and JOHN DOES 1-5 (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. 201 *et seq.*, for violation of Title Two of the Texas Labor Code ("TLC") §§ 62.001 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.      This is a collective and class action brought by Named Plaintiffs challenging acts committed by Defendants against Named Plaintiffs and those similarly situated, which amounted to violations of federal and state wage and hour laws.

2.      Plaintiffs are persons who were and are employed by Defendants in different positions throughout Defendants' various departments. Defendants failed to pay Plaintiffs with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

3.      Within the collective group of Plaintiffs, is a sub-collective and class comprised of persons who Defendants formerly and currently employ within their code compliance department. These employees were and are compensated on an hourly basis.[1] Defendants failed to pay CCEs the state and federal statutorily required minimum wage for all hours worked.

4.      Named Plaintiffs bring this action on behalf of themselves, and those similarly situated, as a result of Defendants' violation of federal and state wage and hour laws, as set forth herein.

5.      First, Defendants' regular failure to pay Plaintiffs the statutorily required overtime rate of time-and-a-half for hours worked beyond forty (40) in a workweek violates the FLSA and any other cause(s) of action that can be inferred from the facts set forth herein.  Defendants violate these laws by engaging in a systematic scheme of providing Plaintiffs with "comp time," rather than overtime pay at the proper rate of pay. Pursuant to this scheme, Defendants did not pay Plaintiffs with an overtime premium for all hours worked in excess of forty (40) hours per workweek, but rather gave them time off the following workweek in the same amount of hours they had worked in excess of forty (40). Accordingly, Plaintiffs were not given one-and-one-half (1 ½) hours off for every hour they worked in excess of forty (40) hours per workweek.

6.      Second, Defendants' regular failure to pay CCEs the statutorily required minimum wage for all hours worked in a workweek violates the FLSA, the TLC, and any other cause(s) of

---

[1]      Hereinafter, Named Plaintiffs in conjunction with all those similarly situated who were employed as hourly employees for Defendants' code compliance department are collectively referred to as "CCEs."

action that can be inferred from the facts set forth herein.  Defendants violate these laws by forcing CCEs to work off-the-clock during their meal break periods and from home.

7.     Named Plaintiffs bring this action, pursuant to 29 U.S.C. § 216(b), on behalf of two (2) collectives of persons: (i) a collective of all persons who are and were employed by Defendants during the past three (3) years through the final date of the disposition of this action who were only paid straight-time for all paid out hours worked including those worked in excess of forty (40) hours per workweek; and (ii) a collective of all persons who are and were employed by Defendants as hourly employees employed in Defendants' code compliance department during the past three (3) years through the final date of the disposition of this action who were required to work off-the-clock during their meal break periods and while at home in violation of the FLSA and are entitled to recover: (1) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (2) unpaid overtime, (3) liquidated damages, (4) interest, and (5) attorney fees and costs, pursuant to the FLSA and such other and further relief as this Court finds necessary and proper.

8.     Named Plaintiffs also bring this action, pursuant to Fed. R. Civ. P. 23, on behalf of a class of persons who are and were employed by Defendants as hourly employees employed in Defendants' code compliance department  during the past three (3) years through the final date of the disposition of this action who were required to work off-the-clock during their meal break periods and while at home in violation of the TLC and are entitled to recover: (1) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (2) unpaid overtime, (3) liquidated damages, (4) interest, and (5) attorney fees and costs, pursuant to the TLC and such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 29 U.S.C. § 201 *et. seq*.

10.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## THE PARTIES

12.     Plaintiff Bass is a citizen of Texas and resides in Cedar Hill, Texas.

13.     At all relevant times, Plaintiff Bass was an employee within the meaning of the FLSA and TLC.

14.     Plaintiff Boyd is a citizen of Texas and resides in Dallas, Texas.

15.     At all relevant times, Plaintiff Boyd was an employee within the meaning of the FLSA and TLC.

16.     Plaintiff Lopez is a citizen of Texas and resides in Mesquite, Texas.

4

17.    At all relevant times, Plaintiff Lopez was an employee within the meaning of the FLSA and TLC.

18.    Plaintiff Scott is a citizen of Texas and resides in Dallas, Texas.

19.    At all relevant times, Plaintiff Scott was an employee within the meaning of the FLSA and TLC.

20.    The Defendant Dallas is a municipality located within the state of Texas and within the Northern District of Texas.

21.    Defendant Dallas transacts business in Texas by formerly and currently employing Named Plaintiffs and those similarly situated as in Dallas, Texas.

22.    Defendant Dallas has at all relevant times been an employer covered by the FLSA and the TLC.

23.    Upon information and belief, the amount of qualifying annual volume of business for Defendant Dallas exceeds $500,000.00 and thus subjects Defendant Dallas to the FLSA's overtime and minimum wage requirements.

24.    Upon information and belief, Defendant Dallas is engaged in interstate commerce.  This independently subjects Defendant Dallas to the overtime and minimum wage requirements of the FLSA.

25.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as John Does 1-5, inclusive, are currently unknown to the Named Plaintiffs, who therefore sue Defendants by such fictitious names pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 33.004.

26.     Plaintiffs allege, upon information and belief, that each of Defendants named as John Doe(s) are legally responsible in some manner for the unlawful acts referred within the complaint.

27.     Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of Defendants designated as "John Does 1-5" when such identities become known.

28.     Defendants jointly employed Plaintiffs and those similarly situated by employing or acting in the interest of employer towards Plaintiffs and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation and by suffering all those similarly situated employees to work.


## STATEMENT OF THE FACTS

### I.    Overtime Violations

29.     Throughout the relevant time period, Plaintiffs were employed by Defendants.

30.     Plaintiffs worked in different positions and for a variety of different departments, including the code compliance department.

31.     Plaintiffs worked in excess of forty (40) hours per workweek.

32.     Instead of compensating Plaintiffs with an overtime premium for all hours worked in excess of forty (40) hours per workweek, Defendants required them to take "comp time."

33.     Defendants' "comp time" scheme required all Plaintiffs to take one (1) hour off the second week of their pay period for every hour they worked in excess of forty (40) the first week of the pay period. For example, if a Plaintiff worked forty-five (45) hours the first week of his pay period, he was only permitted to work thirty-five (35) hours during the second week of the pay period.

34.     Plaintiffs were not given one-and-one-half (1 ½) hours off the second pay period for every hour they worked in excess of forty (40) the first week of the pay period. Instead, as stated above, Plaintiffs were given "comp time" off on a 1:1 ratio.

35.     Plaintiffs were required to use their "comp time" in the same pay period in which it accrued.

36.     If a Plaintiff attempted not to use his accrued "comp time," he was sent home upon arriving to Defendants' facilities.

37.     Plaintiffs were not exempt from the overtime provisions of the FLSA.

## II.    Minimum Wage Violations

### a.    Facts Common to All CCEs

38.     CCEs were assigned to different districts throughout the city of Dallas. Defendants implemented the same policies and practices for every district.

39.     CCEs received their work schedule at the time of their hiring.

40.     CCEs were scheduled and were given an hour per workday for a meal break.

41.     CCEs recorded their hours worked by writing and initialing the time they began their shift and the time they ended their shift on Defendants' sign in/sign out sheet.

42.     Each workday, CCEs recorded the time they began their shift at the commencement of their shift and they recorded the end of their shift at the conclusion of their shift.

43.     Defendants did not pay CCEs for their meal break periods.

44.     CCEs biweekly pay period began on Wednesday and ended on Tuesday.

45.     CCEs were paid, via check, every two (2) weeks.

46.     CCEs were compensated on an hourly basis.

47.    CCEs are not exempt from the provisions of the FLSA and the TLC as they were compensated on an hourly basis and not on a salary or fee basis.

### i.  Meal Break Periods

48.    CCEs were issued a cellphone by Defendants.

49.    Defendants required that CCEs remain accessible via their cellphones throughout the workday.

50.    Defendants required that CCEs remain accessible via their cellphones during their meal break periods.

51.    CCEs answered cellphone calls and had work related discussions with their supervisors, co-workers, and Defendant Dallas' citizens. These cellphone conversations lasted anywhere between five (5) minutes to forty-five (45) minutes per meal break period.

52.    Accordingly, CCEs spent at least a quarter (¼) of their meal break periods answering their cellphone for work related matters.

53.    As stated above, CCEs were not paid for their meal break periods.

54.    CCEs were required to work off-the-clock during their meal break periods.

### ii.  Working From Home

55.    Defendants issued CCEs a laptop so that CCEs could perform work outside of Defendants' facilities.

56.    Defendants required that CCEs respond to work related emails and finish their case load.

57.    In order to complete their workload, CCEs worked from home on their issued laptop to answer emails and to update/complete code violation cases.

58.    Defendants had knowledge of CCEs working from home as each email sent by an Inspector was time stamped. Furthermore, each code violation case had a time stamp as to when it was updated or completed.

59.    CCEs worked at home, on average, approximately, five (5) to ten (10) hours per workweek.

60.    Defendants did not record the hours CCEs worked from home.

61.    CCEs were not compensated for any hours that they worked from home.

62.    Accordingly, Defendants required CCEs to work off-the-clock when they worked from home.

### III.    Facts Pertaining to Plaintiff Bass

63.    Plaintiff Bass was employed as an hourly employee for Defendants' code compliance department.

64.    In or around 2005, Plaintiff Bass began working for Defendants' code compliance department.

65.    In or around 2009, Plaintiff Bass began working as a code compliance supervisor.

66.    Throughout his employment as a code compliance supervisor, Plaintiff Bass was assigned to the southcentral, southeast, and southwest districts.

67.    As a code compliance supervisor, Plaintiff Bass earned approximately $27.00 per hour.

68.    Plaintiff Bass worked, on average, approximately forty-five (45) to fifty (50) hours per workweek.

69.    Plaintiff Bass was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

9

70.     Plaintiff Bass was only given one (1) hour of "comp time" off per hour he worked overtime.

71.     In addition to the forty-five (45) to fifty (50) hours per workweek Plaintiff Bass worked while on-the-clock, he worked approximately forty-five (45) minutes from home per workweek.

72.     Plaintiff Bass was not compensated for any hours that he worked from home.

73.     Plaintiff Bass was also required to remain available during his meal break periods to answer cellphone calls from his supervisors, Defendants' employees, and Defendant Dallas' citizens.

74.     Plaintiff Bass spent approximately thirty (30) to forty-five (45) minutes of his meal break periods answering calls and discussing a variety of work related matters with callers.

75.     Despite being required to answer his cellphone during his meal break periods, Plaintiff Bass automatically had an hour of pay each workday deducted for meal break periods.

76.     Accordingly, Plaintiff Bass was required to work off-the-clock when he worked from home and when he remained available and answered his cellphone during his meal break periods.

77.     Plaintiff Bass was laid off on August 15, 2017, in accordance with Defendants' reduction in force.

IV.    **Facts Pertaining to Plaintiff Boyd**

78.     Plaintiff Boyd was employed as an hourly employee for Defendants' code compliance department.

79.     In or around July of 2004, Plaintiff Boyd began working for Defendants' code compliance department.

80.     In or around 2015, Plaintiff Boyd began working as a code compliance supervisor.

81.     Plaintiff Boyd as a code compliance supervisor, was assigned to the central district.

82.     As a code compliance supervisor, Plaintiff Boyd earned approximately $24.58 per hour.

83.     Plaintiff Boyd worked, on average, approximately forty-three (43) to forty-nine (49) hours per workweek.

84.     Plaintiff Boyd was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

85.     Plaintiff Boyd, was only given one (1) hour of "comp time" off per hour he worked overtime.

86.      In addition to the forty-three (43) to forty-nine (49) hours per workweek Plaintiff Boyd worked while on-the-clock, he worked approximately five (5) to fifteen (15) hours from home per workweek.

87.     Plaintiff Boyd was not compensated for any hour that he worked from home.

88.     Plaintiff Boyd was also required to remain available during his meal break periods to answer cellphone calls from his supervisors, Defendants' employees, and Defendant Dallas' citizens.

89.     Plaintiff Boyd spent approximately fifteen (15) to thirty (30) minutes of his meal break periods answering calls and discussing a variety of work related matters with the callers.

90.     Despite being required to answer his cellphone during his meal break periods, Plaintiff Boyd automatically had an hour of pay each workday deducted for meal break periods.

91.     Accordingly, Plaintiff Boyd was required to work off-the-clock when he worked from home and when he remained available and answered his cellphone during his meal break periods.

92.     Plaintiff Boyd was laid off on August 15, 2017, in accordance with Defendants' reduction in force.

## V.     Facts Specific to Plaintiff Lopez

93.     Plaintiff Lopez is employed as an hourly employee for Defendants' code compliance department.

94.     In or around June 2006, Plaintiff Lopez began her employment as a code compliance inspector for Defendants' code compliance department.

95.     Plaintiff Lopez, as a code compliance inspector, was assigned to the multi-tenant, neighbor investment program, southwest, northeast, and central districts.

96.     As a code compliance inspector, Plaintiff Lopez earned approximately $23.00 per hour.

97.     Plaintiff Lopez worked, on average, approximately forty-five (45) to fifty (50) hours per workweek.

98.     Plaintiff Lopez was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

99.     Plaintiff Lopez was only given one (1) hour of "comp time" off per hour she worked overtime.

100.     In addition to the forty-five (45) to fifty (50) hours per workweek Plaintiff Lopez worked while on-the-clock, Plaintiff Lopez worked approximately five (5) to fifteen (15) hours from home per workweek.

101.    Plaintiff Lopez was not compensated for any hour that she worked from home.

102.    Plaintiff Lopez was also required to remain available during her meal break periods to answer cellphone calls from her supervisors, Defendants' employees, and Defendant Dallas' citizens.

103.    Plaintiff Lopez spent approximately twenty (20) to thirty (30) minutes of her meal break periods answering calls and discussing a variety of work related matters with the callers.

104.    Despite being required to answer her cellphone during her meal break periods, Plaintiff Lopez automatically had an hour of pay each workday deducted for meal break periods.

105.    Accordingly, Plaintiff Lopez was required to work off-the-clock when she worked from home and when she remained available and answered her cellphone during her meal break periods.

106.    Currently, Plaintiff Lopez remains an employee of Defendants.

## VI.    Facts Specific to Plaintiff Scott

107.    Plaintiff Scott was employed as an hourly employee for Defendants' code compliance department.

108.    In or around 1998, Plaintiff Scott began working for Defendants' code compliance department.

109.    In or around 2009, Plaintiff Scott began working as a code compliance supervisor.

110.    As a code compliance supervisor, Plaintiff Scott was assigned to the premise abatement team, the support abatement forfeiture enforcement, the urban rehabilitation standards board northeast, the northwest, the southcentral, the southwest, and the southeast districts.

111.    As a code compliance supervisor, Plaintiff Scott earned approximately $26.37 per hour.

112.    Plaintiff Scott worked, on average, approximately forty-five (45) to forty-nine (49) hours per workweek.

113.    Plaintiff Scott was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

114.    Plaintiff Scott was only given one (1) hour of "comp time" off per hour he worked overtime.

115.    In addition to forty-five (45) to forty-nine (49) hours per workweek Plaintiff Scott worked while on-the-clock, he worked approximately seven (7) to fifteen (15) hours from home per workweek.

116.    Plaintiff Scott was not compensated for any hour that he worked from home.

117.    Plaintiff Scott was also required to remain available during his meal break periods to answer cellphone calls from his supervisors, Defendants' employees, and Defendant Dallas' citizens.

118.    Plaintiff Scott spent approximately fifteen (15) to thirty (30) minutes of his meal break periods answering calls and discussing a variety of work related matters with the callers.

119.    Despite being required to answer his cellphone during his meal break periods, Plaintiff Scott automatically had an hour of pay each workday deducted for meal break periods.

120.    Accordingly, Plaintiff Scott was required to work off-the-clock when he worked from home and when he remained available and answered his cellphone during his meal break periods.

121.    On or around April 2016, Plaintiff Scott filed a grievance with his union regarding his required availability to use Defendants' cellphone during his meal break periods. The grievance

14

was resolved in Plaintiff Scott's favor, but Defendants refused to compensate him during each meal break period he was required to remain available and answer cellphone calls.

122.    Plaintiff Scott was laid off on August 15, 2017, in accordance with Defendants' reduction in force.

## FLSA COLLECTIVE ACTION ALLEGATIONS

### A.  FLSA OVERTIME COLLECTIVE

123.    Named Plaintiffs seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following collective:

> All persons employed by Defendants during the relevant time period, who have been subject to Defendants' policies requiring them to work in excess of forty (40) hours per workweek at their base hourly rate of pay.

124.    At all relevant times, Named Plaintiffs were similarly situated to all such individuals in the FLSA Overtime Collective[2] because while employed by Defendants, Named Plaintiffs and all FLSA Overtime Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per workweek and were subject to Defendants' policies and practices of willfully failing to pay them at the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

125.    Defendants are and have been aware of the requirement to pay Named Plaintiffs and the FLSA Overtime Plaintiffs at a rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully chose not to.

---

[2]        Hereinafter referred to as the FLSA Overtime Plaintiffs.

126.    The FLSA Overtime Plaintiffs, under Named Plaintiffs' FLSA claim, are readily discernable and ascertainable. All FLSA Overtime Plaintiffs' contact information is readily available in Defendants' records.  Notice of this collective action can be made as soon as the Court determines.

127.    The number of FLSA Overtime Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

128.    All questions relating to Defendants' violation of the FLSA share the common factual basis with Named Plaintiffs.  No claims under the FLSA relating to the failure to pay statutorily required overtime premiums are specific to Named Plaintiffs and the claims asserted by Named Plaintiffs are typical of those of members of the collective.

129.    Named Plaintiffs will fairly and adequately represent the interests of the collective and have no interests conflicting with the collective.

130.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

131.    Named Plaintiffs' attorneys are familiar and experienced with collective and class action litigation, as well as employment and labor law litigation.

132.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual FLSA Overtime Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

133.    The questions of law and fact are nearly identical for all FLSA Overtime Plaintiffs and therefore proceeding as a collective action is ideal.  Without judicial resolution of the claims

asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## B.  FLSA MINUMUM WAGE COLLECTIVE

134.    Named Plaintiffs also seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following collective:

> All persons who were employed as hourly employees for Defendants' code compliance department during the relevant time period, who have been subject to Defendants' policies/practices of requiring them to work off-the-clock during their meal break periods and from home.

135.    At all relevant times, Named Plaintiffs were similarly situated to all such individuals in the proposed FLSA Minimum Wage Collective[3] because, while employed by Defendants, Named Plaintiffs and FLSA Minimum Wage Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or similar manner, were paid the same or similar rate, and were required to work off-the-clock during their meal break periods and from home.

136.    Defendants are and have been aware of the requirement to pay Named Plaintiffs and members of the FLSA Minimum Wage Plaintiffs at a rate of $7.25, yet willfully chose not to.

137.    The FLSA Minimum Wage Plaintiffs, under Named Plaintiffs' FLSA claim, are readily discernable and ascertainable.  All FLSA Minimum Wage Plaintiffs' contact information is readily available in Defendants' records.  Notice of this collective action can be made as soon as the Court determines.

---

[3]    Hereinafter referred to as the FLSA Minimum Wage Plaintiffs.

138.    The members of the FLSA Minimum Wage Collective are too numerous to join in a single action, necessitating collective recognition.

139.    All questions relating to Defendants' violation of the FLSA share a common factual basis with Named Plaintiffs.  No claims under the FLSA relating to Defendants' failure to pay minimum wage for all hours worked are specific to Named Plaintiffs and the claims asserted by Named Plaintiffs are typical of those of the proposed collective.

140.    Named Plaintiffs will fairly and adequately represent the interests of the FLSA Minimum Wage Plaintiffs and have no interests conflicting with the collective.

141.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate members of the proposed collective's claims under the FLSA.

142.    Named Plaintiffs' attorneys are familiar and experienced with class action litigation as well as employment and labor law litigation.

143.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by saving the Court's time and efforts and by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual FLSA Minimum Wage Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of members of the proposed collective's interests without their knowledge or contribution.

144.    The questions of law and fact are nearly identical for all FLSA Minimum Wage Plaintiffs and therefore proceeding as a collective action is ideal.  Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## RULE 23 CLASS ACTION ALLEGATIONS

145.    Named Plaintiffs additionally seek to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous three years, were subjected to violations of the TLC ("Texas Class").

146.    The Class which Named Plaintiffs seek to define includes:

> All persons who were employed as hourly employees for Defendants' code compliance department during the relevant time period, who have been subject to Defendants' policies of requiring them to work off-the-clock during their meal break periods and from home.

147.    The number of class members protected by the TLC and who have suffered from Defendants' violation of the TLC, as set forth herein, are too numerous to join in a single action, necessitating class recognition.

148.    All questions relating to the Class's allegations under the TLC share a common factual basis with those raised by the claims of Named Plaintiffs. No claims under the TLC relating to the denial of minimum wage are specific to Named Plaintiffs or any proposed Texas Class member and the claims of Named Plaintiffs are typical of those asserted by the proposed Texas Class.

149.    Named Plaintiffs will fairly and adequately represent the interests of all members of the proposed Texas Class.

150.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated the TLC by failing to pay statutorily required minimum wage for all hours worked to all members of the proposed Texas Class.

151.    The class members of the proposed Texas Class are readily discernable and ascertainable.  Contact information for all members of the proposed Texas Class[4] is readily available from Defendants since such information is likely to be contained in their personnel files.  Notice of this class action can be provided by any means permissible under the FRCP Rule 23 requirements.

152.    Named Plaintiffs assert these claims on their own behalf as well as on behalf of the Texas Class Plaintiffs through their attorneys who are experienced in class action litigation as well as employment litigation.

153.    Named Plaintiffs are able to fairly represent and properly protect the interests of the absent members of the proposed Texas Class and have no interests conflicting with those of the class.

154.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual Texas Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

155.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Named Plaintiffs' willingness to proceed against Defendants.  The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Texas Class Plaintiffs' jobs and continued employment.

---

[4]    Hereinafter referred to as the Texas Class Plaintiffs.

20

156.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal.  Without judicial resolution of the claims asserted on behalf of the proposed Texas Class, continued violations of the TLC will undoubtedly continue.

157.    Whether Named Plaintiffs and the Texas Class Plaintiffs were properly compensated at the minimum wage for all hours worked is a common question which can readily be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Named Plaintiffs on Behalf of All FLSA Overtime Plaintiffs**

158.    Named Plaintiffs and the FLSA Overtime Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

159.    Throughout the period covered by the applicable statute of limitations, Named Plaintiffs and other FLSA Overtime Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

160.    Upon information and belief, Defendants knowingly failed to pay Named Plaintiffs and the FLSA Overtime Plaintiffs for all hours worked and failed to pay Named Plaintiffs and the FLSA Overtime Plaintiffs the statutorily required overtime rate for all hours worked in excess of forty (40) per workweek.

161.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

162.    Defendants' conduct was in violation of the Fair Labor Standards Act.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Named Plaintiffs on**
**Behalf of All FLSA Minimum Wage Plaintiffs**

163.    Named Plaintiffs and the FLSA Minimum Wage Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

164.    Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Named Plaintiffs and the FLSA Minimum Wage Plaintiffs the minimum wage for all hours worked off-the-clock due to Defendants' practice of forcing them to work during their meal break periods and from home.

165.    Named Plaintiffs and FLSA Minimum Wage Plaintiffs are entitled to payment at the minimum wage for all hours worked.

166.    Upon information and belief, Defendants knowingly failed to pay Named Plaintiffs and the FLSA Minimum Wage Plaintiffs the statutory minimum wage for all hours worked in a workweek.

167.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

168.    Defendants' conduct was in violation of the Fair Labor Standards Act.


**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**The Texas Labor Code §§ 62.001 *et seq.*, Made by Named Plaintiffs on Behalf of All Texas**
**Class Plaintiffs**

169.    Named Plaintiffs and Texas Class Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

170.    Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Named Plaintiffs and the Texas Class Plaintiffs the minimum wage for

all hours worked off-the-clock due to Defendants' practice of forcing them to work during their meal break periods and from home.

171.    Named Plaintiffs and the Texas Class Plaintiffs are entitled to payment at the minimum wage for all hours worked.

172.    Upon information and belief, Defendants knowingly failed to pay Named Plaintiffs and the Texas Class Plaintiffs the statutory minimum wage for all hours worked in a workweek.

173.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

174.    Defendants' conduct was in violation of the Texas Labor Code.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Named Plaintiffs, on behalf of themselves and all FLSA Collectives and Texas Class Plaintiffs employed by each Defendant, demand judgment against Defendants as follows:

A.    At the earliest possible time, Named Plaintiffs should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the purported Collectives, defined herein.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

B.    Designation of Named Plaintiffs as representatives of the FLSA Collectives and Rule 23 Class defined herein, and Named Plaintiffs' counsel as Class Counsel;

C.    Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

D.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed Texas Class members under the Texas Labor Code;

E.      Demand a jury trial on these issues to determine liability and damages;

F.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

G.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. and the Texas Labor Code, §§ 62.001 *et seq*.;

H.      All damages which Named Plaintiffs and all FLSA Collectives and Texas Class Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

I.      An award to Named Plaintiffs and all FLSA Collectives and Texas Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

J.      An award to Named Plaintiffs and all FLSA Collectives and Texas Class Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

K.    An award to Named Plaintiffs and all FLSA Collectives and Texas Class Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

L.    Awarding Named Plaintiffs and all FLSA Collectives and Texas Class Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

M.    Pre-judgment and post-judgment interest, as provided by law; and

N.    Granting Named Plaintiffs and all FLSA Collectives and Texas Class Plaintiffs other and further relief as this Court finds necessary and proper.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiffs demands

a trial by jury on all questions of fact raised by this Complaint.


Dated:   December 8, 2017


Respectfully submitted,

Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
**Ellwanger Law LLLP**
400 South Zang Blvd.
Suite 1015
Dallas, Texas 75208
(214) 984-3334 (phone)


OF COUNSEL:

Robert J. Valli, Jr.
*pro hac vice admission pending*
Sara Wyn Kane
*pro hac vice admission pending*
James Vagnini
*pro hac vice admission pending*
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (fax)


**ATTORNEYS FOR PLAINTIFFS**