# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TERRANCE BASS; BARRY BOYD;** | § | |
| **ELIZABETH LOPEZ; and** | § | |
| **JOSEPH SCOTT, individually and** | § | |
| **on behalf of all others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 3:17-cv-03330-C** |
| **v.** | § | |
| | § | |
| **THE CITY OF DALLAS;** | § | |
| **and JOHN DOES 1-5,** | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANT'S RESPONSE TO PLAINTIFFS'
## MOTION FOR CONDITIONAL CERTIFICATION

---

John B. Brown
Texas State Bar No. 00793412
john.brown@ogletreedeakins.com
Jamie Ashton
Texas State Bar No. 24087211
jamie.ashton@ogletreedeakins.com

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Preston Commons
8117 Preston Road
Dallas, Texas  75225
(214) 987-3800
(214) 987-3927 (Fax)

Larry E. Casto
City Attorney
Texas State Bar No. 03995000
larry.casto@dallascityhall.com
Ayeh B. Powers
Executive Assistant City Attorney
Texas State Bar No. 24031848
ayeh.powers@dallascityhall.com
Sarah E. Mendola
Senior Assistant City Attorney
Texas State Bar No. 24057030
sarah.mendola@dallascityhall.com
Nicholas D. Palmer
Senior Assistant City Attorney
Texas State Bar No. 24067814
nicholas.palmer@dallascityhall.com

DALLAS CITY ATTORNEY'S OFFICE
1500 Marilla Street, Room 7D North
Dallas, Texas 75201
Telephone: (214) 670-3519
Facsimile: (214) 670-0622

**ATTORNEYS FOR DEFENDANT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iv

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     FACTUAL BACKGROUND ........................................................................ 2

    A.      Relevant City Payroll Policies and Practices .......................................... 3

        1.      Exempt employees record exception time only and are the only
                employees eligible to earn compensatory leave............................ 4

        2.      Neighborhood Code Plaintiffs use positive time entry and earn
                overtime pay but not compensatory leave. ................................. 5

    B.      Three Plaintiffs Are Exempt, Salaried Employees. ................................... 6

    C.      The Neighborhood Code Plaintiffs Are Nonexempt, Hourly Employees. .............. 7

        1.      The City did not require or expect the Neighborhood Code
                Plaintiffs to work from home.............................................. 8

        2.      The Neighborhood Code Plaintiffs did not need to bring their work
                phones home. ............................................................. 8

        3.      The Neighborhood Code Plaintiffs were responsible for their own
                meal breaks and were not required to work during them..................... 9

    D.      All Plaintiffs Were Properly Paid for All the Time They Worked. ................. 9

III.    ARGUMENT AND AUTHORITIES .................................................................. 10

    A.      The Court Should Not Conditionally Certify the Proposed Class. ................... 10

        1.      Standard for conditional certification. .................................. 10

        2.      There is no reasonable basis for believing that aggrieved
                individuals exist. ...................................................... 12

        3.      The potential class members are not similarly situated in relevant
                respects................................................................. 17

    B.      In the Alternative, Plaintiffs' Proposed Class Should Be Limited. ............... 20

    C.      Plaintiff's Proposed Notice and Procedure Are Improper. ........................ 21

1.    The relevant time period should extend back no more than three
      years. ......................................................................................................21

2.    Dissemination of the notice should be limited to U.S. first-class
      mail only. ..............................................................................................22

3.    The City should not be required to disclose personal information
      for potential class members. ..................................................................23

4.    Plaintiffs should not be allowed to send subsequent mailings...................24

5.    The Notice should explain the potential plaintiffs' responsibilities. .........25

6.    Plaintiffs' proposed 60-day opt-in period is too long. ..............................25

IV.    CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altiep v. Food Safety Net Services, Ltd.*,
   No. 3:14-CV-00642-K, 2014 WL 4081213 (N.D. Tex. Aug. 18, 2014) ..........................22, 23

*Andersen v. Wells Fargo Fin., Inc.*,
   No. 4:11-cv-00085-JAJ-TJS, 2012 U.S. Dist. LEXIS 23175 (S.D. Iowa Feb. 6,
   2012) ...............................................................................................................................15

*Arceo v. Orta*,
   296 F. Supp. 3d 818 (N.D. Tex. 2017) (Fitzwater, C.J.) ..........................................22

*Aufleger v. Eastex Crude Co.*,
   2006 WL 2161591 (N.D. Tex. July 31, 2006) .........................................................20

*Behnken v. Luminant Min. Co., LLC*,
   997 F. Supp. 2d 511 (N.D. Tex. 2014) (Fitzwater, C.J.) ..........................................25

*Bernard v. IBP, Inc. of Neb.*,
   154 F.3d 259 (5th Cir. 1998) ...................................................................................13

*Brumbelow v. Quality Mills, Inc.*,
   462 F.2d 1324 (5th Cir. 1972) .................................................................................14

*Caballero v. Kelly Servs., Inc.*,
   2015 WL 12732863 (S.D. Tex. Oct. 5, 2015).....................................................18, 19

*Dudley v. Texas Waste Sys., Inc.*,
   2005 WL 1140605 (W.D. Tex. May 16, 2005) .......................................................13

*Fairchild v. All Am. Check Cashing, Inc.*,
   815 F.3d 959 (5th Cir. 2016) ...............................................................................13, 14

*Griffith v. Wells Fargo Bank*,
   2012 WL 3985093 (S.D. Tex. Sept. 12, 2012) .......................................................18

*Harper v. Lovett's Buffet, Inc.*,
   185 F.R.D. 358 (M.D. Ala. Jan. 25, 1999)..............................................................21

*Harris v. Fee Transportation Servs., Inc.*,
   2006 WL 1994586 (N.D. Tex. May 15, 2006) .......................................................11

*Harvill v. Westward Commc'ns, L.L.C.*,
   433 F.3d 428 (5th Cir. 2005) ...................................................................................14

*Hickson v. U.S. Postal Serv.*,
   5:09-CV83, 2010 WL 3835887 (E.D. Tex. July 22, 2010) ....................................................15

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) (Scalia, J., dissenting)........................................................................10, 24

*Jones v. Xerox Commercial Sols., LLC*,
   Civ. A. No. 4:13–cv–650, 2013 WL 5945652 (S.D. Tex. Nov. 6, 2013) ...............................18

*Lacy v. Dallas Cowboys Football Club*,
   No. 3:11-CV-0300-B, 2012 WL 2795979 (N.D. Tex. July 10, 2012).....................................13

*Lentz v. Sparky's Rest. II, Inc.*,
   491 F. Supp. 2d 663 (N.D. Tex. 2007) .............................................................................10, 11

*Lopez v. Bombay Pizza Co.*,
   No. Civ. A. H-11-4217, 2012 WL 5397192 (S.D. Tex. Nov. 5, 2012) ...................................24

*Lusardi v. Xerox Corp.*,
   118 F.R.D. 351 (D.N.J. 1987)................................................................................................11

*MacGregor v. Farmers Ins. Exch.*,
   2011 WL 2981466 (D.S.C. 2011)...........................................................................................18

*Martinez v. Cargill Meat Solutions*,
   265 F.R.D. 490 (D. Neb. 2009)..............................................................................................25

*McDonald v. Worldpac, Inc.*,
   No. 3:13-CV-4965-K, 2015 WL 12753533 (N.D. Tex. Sept. 8, 2015) ......................22, 23, 25

*McKnight v. Kimberly Clark Corp.*,
   149 F.3d 1125 (10th Cir. 1998) .............................................................................................14

*Mooney v. Aramco Servs. Co.*,
   54 F.3d 1207 (5th Cir. 1995) .................................................................................................11

*Newton v. City of Henderson*,
   47 F.3d 746 (5th Cir. 1995) ...................................................................................................14

*Nguyen v. Versacom, LLC*,
   No. 3:13-CV-4689-D, 2015 WL 1400564 (N.D. Tex. Mar. 27, 2015)
   (Fitzwater, C.J.)................................................................................................................23, 24

*Novick v. Shipcom Wireless, Inc.*,
   No. 4:16-CV-0730, 2017 WL 1344961 (S.D. Tex. Apr. 12, 2017).........................................11

*Pacheco v. Boar's Head Provisions Co., Inc.*,
   671 F. Supp. 2d 957 (W.D. Mich. 2009) ................................................................................15

*Parker v. Silverleaf Resorts, Inc.*,
No. 3:14-CV-2075-B, 2017 WL 1550522 (N.D. Tex. May 1, 2017) ...............................12, 17

*Redus v. CSPH, Inc.*,
2017 WL 2188777 (N.D. Tex. May 17, 2017) .......................................................................22

*Rogers v. Ocean Cable Grp. Inc.*,
2011 WL 6887154 (D.N.J. Dec. 29, 2011) .............................................................................20

*Russell v. Illinois Bell Tel. Co.*,
575 F. Supp. 2d 930 (N.D. Ill. 2008) ...................................................................................25

*Ryan v. Staff Care*,
497 F. Supp. 2d 820 (N.D. Tex. July 6, 2007).......................................................................20

*Saleen v. Waste Mgmt., Inc.*,
2009 WL 1664451 (D. Minn. 2009) .....................................................................................18

*Sharpe v. APAC Customer Servs., Inc.*,
No. 09-cv-329-bbc, 2010 WL 1292154 (W.D. Wis. Mar. 29, 2010) ...............................24, 25

*Simmons v. T-Mobile USA, Inc.*,
2007 WL 21008 (S.D. Tex. Jan. 24, 2007) ............................................................................18

*Simmons v. T-Mobile USA, Inc.*,
No. 06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)....................................................11

*Smith v. Family Video Movie Club, Inc.*,
11-CV-1773, 2013 WL 1628176 (N.D. Ill. Apr. 15, 2013)...................................................19

*Straka v. Methodist Dallas Med. Ctr. Auxiliary*,
2018 WL 1611865 (N.D. Tex. Apr. 3, 2018) .......................................................................21

*Thompson v. Speedway SuperAmerica LLC*,
No. 08-CV-1107-PJS-RLE, 2009 WL 130069 (D. Minn. Jan. 20, 2009) ..............................15

*Valcho v. Dallas Cty. Hosp. Dist.*,
574 F. Supp. 2d 618 (N.D. Tex. 2008) .................................................................................13

*Vanzzini v. Action Meat Distribs., Inc.*,
995 F. Supp. 2d 703 (S.D. Tex. 2014) ..................................................................................18

*Vela v. City of Houston*,
276 F.3d 659 (5th Cir. 2001) ...............................................................................................17

*Villarreal v. St. Luke's Episcopal Hosp.*,
751 F. Supp. 2d 902 (S.D. Tex. 2010) ..................................................................................22

*Williams v. Long*,
    585 F. Supp. 2d 679 (D. Md. 2008) ........................................................................................25

**Statutes**

29 U.S.C. § 216 ........................................................................................................................10

29 U.S.C. § 256 ........................................................................................................................22

Fair Labor Standards Act .....................................................................1, 2, 10, 11, 13, 14, 15, 18

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **TERRANCE BASS; BARRY BOYD;** | § | |
| **ELIZABETH LOPEZ; and** | § | |
| **JOSEPH SCOTT, individually and** | § | |
| **on behalf of all others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 3:17-cv-03330-C** |
| **v.** | § | |
| | § | |
| **THE CITY OF DALLAS;** | § | |
| **and JOHN DOES 1-5,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION**

Defendant City of Dallas (the "City") hereby responds to Plaintiffs' Motion for Conditional Certification (the "Motion") [Docket No. 64].

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs ask the Court to conditionally certify a vague and sprawling class of current and former City employees that would have two subparts, neither of which has any reasonable restrictions such that the putative class members could be identified. Plaintiffs have not met their burden to show that conditional certification is appropriate. Therefore, the Court should deny the Motion.

First, Plaintiffs have not shown that there is a reasonable basis to conclude that aggrieved individuals even exist. In particular, they have identified no City policy or practice that even arguably violates the Fair Labor Standards Act ("FLSA"). Plaintiffs assert that the City violated the FLSA by (1) requiring nonexempt employees in the City's Code Compliance Department to work "off the clock" and (2) "requiring nonexempt employees on a City-wide basis" to take

compensatory leave in lieu of overtime. City policies and practices reveal the contrary. Nonexempt employees in the Code Compliance Department were required to accurately report all time worked, and were paid for all of that time—including any overtime they reported. Moreover, pursuant to policy, the City offers compensatory leave *only* to exempt employees. Nonexempt employees were never eligible for—nor did they receive—compensatory leave.

Second, the potential class members are not similarly situated. Twenty five[1] Plaintiffs are *nonexempt*, hourly employees who worked in various positions and in various districts within a single division—the Neighborhood Code Division—of the Code Compliance Department. These Plaintiffs' daily routines and duties varied widely, and they spent a majority of their work days alone, away from a City office. The remaining three Plaintiffs are *exempt*, salaried employees who did *not* work in the Code Compliance Department. Because they are exempt from the FLSA's overtime provisions, these three Plaintiffs have no conceivable claim for FLSA overtime violations.

Based on the factual record, the Court should, in its discretion, deny the Motion. In the alternative, the Court should, at a minimum, restrict the class to nonexempt employees in the Code Compliance Department's Neighborhood Code Division.

## II.   FACTUAL BACKGROUND

The City employs approximately 13,000 people.[2] The City has 33 departments and each department functions in different ways.[3] All but three of the 28 Plaintiffs worked in the Code Compliance Department.[4] In fact, these Plaintiffs worked within a single division of that

---

[1] The Motion incorrectly states that there have been 42 opt-in plaintiffs. *See* Motion at 1. Several Plaintiffs filed duplicate consents.
[2] App. 25 (Declaration of Patsy Palmer ("Palmer Dec.") ¶ 3).
[3] *Id.*
[4] App. 2 (Declaration of Kris Sweckard ("Sweckard Dec.") ¶ 4).

department: the Neighborhood Code Division.[5] They worked in different districts around the City and were employed as either inspectors, supervisors, or neighborhood code representatives (collectively, the "Neighborhood Code Plaintiffs").[6]

## A.    Relevant City Payroll Policies and Practices

City policies and procedures are made available to employees upon hire and are available online on the City's intranet.[7] Administrative Directive 3-56, titled "Payroll Procedures," applies to "all City departments and employees" and requires employees to record their time accurately:

> An Employee's submitted times worked or leave time in ESS, Kronos or any other City time system is considered to be the true and accurate representation of the actual time worked. **Falsification of Human Resources and/or payroll data, including but not limited to time or leave entries or omissions of time and leave entries and approvals, is a violation of the City of Dallas Personnel Rules**, Section 34-36 Rules of Conduct (b)(8)(B). City of Dallas employees who violate this Directive will be subject to appropriate disciplinary action.[8]

The City's standard work week "is the seven day period from Wednesday through Tuesday."[9] To track their time, Plaintiffs—exempt and nonexempt—used a time keeping system called Lawson.[10] An employee who logs in to Lawson to modify time is shown the following screen:



---

[5] *Id.* The Code Compliance Department is divided into three divisions: Neighborhood Code, Consumer Health, and Nuisance Abatement. *Id.* at ¶ 3.
[6] *Id.* at ¶ 4.
[7] App. 25 (Palmer Dec. ¶ 5).
[8] App. 30 (Palmer Dec. Ex. C-1, p.1 (emphasis added)).
[9] App. 19 (Dallas City Code Ch. 34 Personnel Rules ("Personnel Rules") Sec. 34-4(57)).
[10] App. 25 (Palmer Dec. ¶ 6).

The method and manner by which an employee enters time into Lawson depends on whether the employee is exempt or nonexempt.[11]

    1.    <u>Exempt employees record exception time only and are the only employees eligible to earn compensatory leave</u>.

Exempt employees earn salaries that do not change based on the number of hours per week they work.[12] Exempt employees are typically assumed to work eight hours each day, for a total of 40 hours per work week and 80 hours each pay period (defined as two work weeks).[13] For this reason, exempt employees record only "exception time" in Lawson.[14] In other words, exempt employees report when they do *not* work, such as when they take a vacation day, a sick day, or another type of leave.[15] Exempt employees may also report when they work more than the assumed eight hours in a work day for purposes of receiving compensatory leave or "Flex Time."[16]

Under City policy, only exempt employees are eligible to earn compensatory leave or Flex Time.[17] By contrast, "a nonexempt employee…may not accrue compensatory leave but will be paid for any overtime hours worked."[18] For example, if an exempt employee took a vacation

---

[11] App. 25 (Palmer Dec. ¶ 6).

[12] App. 22-23 (Personnel Rules Sec. 34-20) App. 26 (Palmer Dec. ¶ 6).

[13] App. 20-21 (Personnel Rules Sec. 34-16); App. 26 and 32 (Palmer Dec. ¶ 6 and Palmer Dec. Ex. C-1, p. 3).

[14] App. 26 (Palmer Dec. ¶ 6). Plaintiff Michael Jones, an exempt employee, admitted he recorded by exception time: "The Lawson system automatically recorded Coordinators as working a forty (40) hours work week. Any changes to these hours had to be made manually to reflect actual hours worked." Plaintiffs' Appendix ("P. App.") 13.

[15] *Id.*

[16] *Id.*; App. 30, 35 (Palmer Dec. Ex. C-1, p. 1, 6). Flex Time "means a balancing time entry process that provides exempt employees with the opportunity to substitute additional hours worked outside of his or her normal work schedule for time not worked during the same pay period in order to meet the total 80 hours required in a pay period." App. 16 (Personnel Rules Sec. 34-4(21)).

[17] App. 6-7 (Swekard Dec. Ex. A-1, Personnel Rules Section 34-24, Titled "Compensatory Leave"). Sec. 34-24 states:

(a)  <u>Eligibility</u>. An exempt employee (other than the city manager, the first assistant city manager, an assistant city manager, a department director, an assistant department director, other managerial personnel designated by the council, or an exempt employee of the city attorney's office) who works overtime one full hour or more in a pay period may earn compensatory leave. **A nonexempt employee** (other than a sworn employee of the police or fire department) **may not accrue compensatory leave but will be paid overtime for any overtime hours worked**. *Id.* (emphasis added).

[18] *Id.*

---

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR CONDITIONAL CERTIFICATION**                        **Page 4**

day on Thursday, July 5 (as shown in the screen shot above), the employee would enter "8" under "hours" and would use the pay code for "vacation" in the slot for July 5. If the exempt employee worked 10 hours on Friday, July 6, the exempt employee would enter "2" under "hours" (8 assumed hours + 2 additional hours = 10 hours) and would use the pay code REGC, for "regular time" (i.e., non-leave time), in the slot for July 6. Because the exempt employee worked more than the assumed eight hours on July 6, the employee would have two "extra" hours to use as Flex Time within the same pay period or as compensatory leave.[19]

      2.     <u>Neighborhood Code Plaintiffs use positive time entry and earn overtime pay but not compensatory leave</u>.

Neighborhood Code Plaintiffs (all of whom are nonexempt) are required to follow a positive timekeeping procedures, meaning that they must record the total number of hours they worked each work week.[20] The procedures specifically state that such employees are paid only for the hours they record in Lawson:

> **Effective April 16, 2014**, all Code Compliance hourly employees will be required to enter all time worked, including regular hours worked and all time off in Lawson HRIS. **Employees will only be paid for the hours recorded in HRIS and approved by the Supervisor**.[21]

For example, if a nonexempt employee worked eight hours on Thursday, July 5 and 10 hours on Friday, July 6, the employee would type "8" under "hours" on July 5 and "10" under "hours" on July 6.[22] Nonexempt employees receive overtime pay at a rate of one-and-one-half times their regular rate for all hours worked over 40 each work week.[23] Nonexempt employees are not eligible to earn compensatory leave or Flex Time.[24]

---

[19] *See* App. 26, 30, 35 (Palmer Dec. ¶ 6 and Palmer Dec. Ex. C-1, p. 1, 6); App. 16 (Personnel Rules Sec. 34-4(21)).
[20] Positive Timekeeping Time Entries for Non-Exempt (Hourly) Employees ("Positive Timekeeping Procedures"), App. 3 (Sweckard Dec. ¶ 6).
[21] App. 43-44 (Palmer Dec. Ex. C-2, (emphasis in original)).
[22] App. 26 (Palmer Dec. Dec. ¶ 6).
[23] App. 21-22 (Personnel Rules Sec. 34-17). Contrary to Plaintiffs' declarations, overtime is calculated on a weekly basis. For example, if a nonexempt employee worked 45 hours in the first work week in a month, that employee

Positive time entry in Lawson is the only way for Neighborhood Code Plaintiffs to record their time.[25] And, unlike exempt employees, the City pays nonexempt employees for the hours actually recorded rather than a fixed salary.[26]  Also, the City does not automatically deduct any time, including time for meal breaks.[27]

## B.    Three Plaintiffs Are Exempt, Salaried Employees.

As stated above, and contrary to the Motion and Plaintiffs' declarations, three of the 28 Plaintiffs were, at all relevant times, exempt employees.[28] Plaintiff Michael Jones worked in the Information Technology Department as a Coordinator III, Plaintiff Leticia Sustaita worked (and still works) in the Police Department as a Supervisor III, and Plaintiff Patrick Jackson worked in the Housing and Neighborhood Revitalization Department as a Manager III.[29] As stated in their respective job descriptions, all three positions were classified as exempt.[30]

As exempt employees, Plaintiffs Jones, Sustaita, and Jackson received salaries;[31] they were not paid on an hourly basis and their salaries did not change depending on the number of hours they worked.[32] Thus, they were *not* eligible to earn overtime pay, but they *were* eligible to earn compensatory leave and Flex Time.[33]

---

would receive five hours of overtime pay that work week. The nonexempt employee would receive this overtime pay even if the employee worked 35 hours in the second work week of that month, and therefore worked a total of 80 hours in the pay period. *Id.*; App. 26-27 (Palmer Dec. ¶ 6, 8).

[24] App. 16 (Personnel Rules Sec. 34-4(21));  App. 6-7 (Swekard Dec. Ex. A-1, 34-24); App. 27, 35 (Palmer Dec. ¶ 6 and Palmer Dec. Exhibit C-1, p. 6).

[25] App. 27, 43-44 (Palmer Dec. ¶ 7 and Palmer Dec. Ex. C-2).

[26] *Id.*

[27] App. 27, 43-44 (Palmer Dec. ¶  10 and Palmer Dec. Ex. C-2).

[28] App. 28 (Palmer Dec. ¶¶ 14-16).

[29] *Id.*

[30] *Id. See also* App. 46-53 (Palmer Dec. Exs. C–3 – C–5).

[31] App. 28, 55-56 (Palmer Dec. ¶ 17 and Palmer Dec. Ex. C-5).

[32] *Id.*; Plaintiffs Jones and Sustaita's declarations include false information, including that they were compensated on an hourly basis and were "required" to take compensatory leave in lieu of overtime pay. P. App. 31, 32, 34.

[33] App. 16 (Personnel Rules Sec. 34-4(21)); App. 6-7 (Swekard Dec. Ex. A-1), App. 26, 30, 35 (Palmer Dec. ¶ 6 and Palmer Dec. Ex. C-1, pp. 1, 6).

---

**C.      The Neighborhood Code Plaintiffs Are Nonexempt, Hourly Employees.**

The Code Compliance Department has two Assistant Directors who report directly to Kris Sweckard, the Director of the Code Compliance Department.[34] Reporting to the Assistant Directors are Division Managers who oversee the three divisions within the Code Compliance Department.[35] Reporting to the Division Managers are various other managers and supervisors, who oversee the inspectors, neighborhood code representatives, and other employees in the division.[36]

The Code Compliance Department's Neighborhood Code Division is comprised of six specialty units. Generally, the Neighborhood Code Division is responsible for responding to complaints made by Dallas citizens. For example, a citizen can call 311 to report that his or her neighbor has overgrown weeds. Weeds, in fact, make up a large percentage of the reports handled by the Neighborhood Code Division. The citizen's report generates a service request that is assigned to an employee in the division. In the overgrown weeds example, the employee would make a site visit to the house and take different actions depending on the situation. For instance, the employee might try to talk to the neighbor or leave a notice regarding the weeds. The employee would note the action on a case log report for that service request.

The Neighborhood Code Plaintiffs worked in different districts and in different positions within the division. Specifically, the Neighborhood Code Plaintiffs worked as either inspectors, supervisors, or neighborhood code representatives.[37]

Typically, the Neighborhood Code Plaintiffs began and ended each shift at one of several field offices, where they checked out a City vehicle to use for site visits.[38] While they spent

---

[34] App. 27 (Palmer Dec. ¶ 11).
[35] *Id.*
[36] *Id.*
[37] App. 2 (Sweckard Dec. ¶ 4).

varying amounts of time at the beginnings and ends of their shifts at the field office completing case reports and other paperwork, they spent the majority of each work day alone on site visits.[39] The autonomous nature of the work performed by the Neighborhood Code Plaintiffs did not permit much oversight by the City.

1.     <u>The City did not require or expect the Neighborhood Code Plaintiffs to work from home</u>.

Most Neighborhood Code Plaintiffs received a City-issued laptop[40] to work on case reports, respond to emails, and perform other work during their shifts.[41] The Neighborhood Code Plaintiffs were not required or expected to respond to work-related emails or update/complete case assignments outside their shift.[42] If the Neighborhood Code Plaintiffs chose to work while at home or otherwise off the clock, they were required to accurately report all the time they worked.[43]

2.     <u>The Neighborhood Code Plaintiffs did not need to bring their work phones home</u>.

The Neighborhood Code Plaintiffs also received a City-issued cell phone.[44] The purpose of the cell phone was to communicate with a supervisor or Dallas citizen during the work shift.[45] The Neighborhood Code Plaintiffs were not required or expected to take the cell phone home and could leave it at their personal work station in the field office.[46]

---

[38] App. 3 (Sweckard Dec. at ¶ 8).
[39] *Id.*
[40] Plaintiff Elizabeth Lopez's declaration claims that she was required to "perform work outside of City of Dallas facilities" and in order to do so, she "work[ed] from home on [her] issued laptop." P. App. 21. This is false. During all relevant times, Plaintiff Lopez did not have a City-issued laptop. App. 4 (Sweckard Dec. ¶ 17).
[41] App. 3 (Sweckard Dec. ¶ 13).
[42] App. 3-4 (Sweckard Dec. ¶ 14).
[43] *Id.*
[44] App. 3 (Sweckard Dec. ¶ 10).
[45] *Id.*
[46] *Id.* at ¶ 11).

3.     The Neighborhood Code Plaintiffs were responsible for their own meal breaks and were not required to work during them.

The Neighborhood Code Plaintiffs are expected to take a one-hour meal break each day.[47] But this break is not automatically deducted from the Neighborhood Code Plaintiffs' time records or paychecks.[48] The meal break was not scheduled, and an employee could take the break whenever he or she chose.[49] The City did not know when the Neighborhood Code Plaintiffs took their breaks or how they spent them. The Neighborhood Code Plaintiffs were not required or expected to answer or otherwise work on their cell phones during meal breaks, even if a supervisor called.[50] Instead, the Neighborhood Code Plaintiffs were permitted to put their phones on silent, put their phones away (in the glove box of the car, for example), and/or ignore their phones during their meal breaks.[51] If the Neighborhood Code Plaintiffs chose to answer the phone during a meal break or otherwise worked during a break, they were instructed either to extend the meal break by the amount of time they worked (thus taking a full one-hour meal break) or to accurately record the time they worked.[52]

**D.     All Plaintiffs Were Properly Paid for All the Time They Worked.**

As explained above, the three exempt employees were paid on a salary basis.[53] The nonexempt Neighborhood Code Plaintiffs were paid on an hourly basis and were required to report all of the time that they worked during a week, including all overtime, in Lawson by the

---

[47] *Id.* at ¶ 9.

[48] *Id.*

[49] *Id.*

[50] *Id.* at ¶ 11. In April 2016, Plaintiff Joseph Scott filed a grievance with the City and alleged that his division manager, Tyrone McGill, required employees to answer their cell phones at all times during their shift, including on a meal break. The City investigated this issue and counseled Mr. McGill. Then, in June 2016 the department management reemphasized the procedures on meal breaks and time keeping, including the requirement for all employees to accurately report all time worked, to the employees. App. 4 (Sweckard Dec. ¶ 16).

[51] *Id.*

[52] App. 3 (App. 3 (Sweckard Dec. ¶ 12).

[53] App. 22-23 (Personnel Rules Sec. 34-20); App. 28, 52-53 (Palmer Dec. ¶ 17 and Palmer Dec. Ex. C-5).

end of that week.[54] The Neighborhood Code Plaintiffs' pay reflected the number of hours they reported.[55] For instance, Plaintiff Elizabeth Lopez reported she worked 4 hours of overtime the week of September 21, 2016 to September 27, 2016, 8.3 hours of overtime the week of September 28, 2016 to October 4, 2016, and 4 hours of overtime the week of October 5, 2016 to October 11, 2016.[56] In another example, Plaintiff Terrance Bass reported he worked 8 hours of overtime the week of June 3, 2015 to June 9, 2015.[57] Plaintiffs Lopez and Bass were properly paid for the overtime they reported.[58] Because they were nonexempt, none of the Neighborhood Code Plaintiffs were eligible for, or received, any compensatory leave.[59] All Plaintiffs were properly paid for all time reported.[60]

## III.   ARGUMENT AND AUTHORITIES

### A.   The Court Should Not Conditionally Certify the Proposed Class.

#### 1.   <u>Standard for conditional certification.</u>

The FLSA does not provide for conditional collective-action certification or the distribution of judicially approved notice to putative plaintiffs. *See* 29. U.S.C. § 216; *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 176 (1989) (Scalia, J., dissenting). However, the United States Supreme Court has recognized that district courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche*, 493 U.S. at 167. This discretion to conditionally certify a class should be exercised in such a way as to avoid "stirring up unwarranted litigation." *Lentz v.*

---

[54] App. 25-27, 30, 37, 43-44 (Palmer Dec. ¶ 6, Palmer Dec. Ex. C-1, pp.1, 8, and Palmer Dec. Ex. C-2).
[55] App. 27 (Palmer Dec. ¶ 11).
[56] App. 46, (Palmer Dec. Ex. C-3, Lopez Pay Records).
[57] App. 47 (Palmer Dec. Ex. C-3, Bass Pay Records).
[58] App. 27, 46-47 (Palmer Dec. ¶ 12 and Palmer Dec. Ex. C-3).
[59] App. 6-7 (Swekard Dec. Ex. A-1) ; App. 28 (Palmer Dec. ¶ 13).
[60] App. 27, 43-44 (Palmer Dec. ¶ 12 and Palmer Dec. Ex. C-2). Neighborhood Code Plaintiffs' claim that they "were not provided with an option to record [the hours they worked form home]" is false and misleading. *See* Motion at p. 5. The very nature of the City's positive time entry system allowed the Plaintiffs (and the Plaintiffs were required) to record *all hours* worked. *See* App. 43-44, 30, 37 (Palmer Dec. Exs. C-1 at pp. 1 and 9, and C-2).

*Sparky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007). "Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff[s] at the employer's expense." *Id.* at 666.

Most courts use the two-step process set forth in *Lusardi v. Xerox Corp.* to determine whether certification is appropriate. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *see Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995). At the first stage, a plaintiff must provide the court with evidence showing that the defendant subjected a group of similarly situated potential class members to a "single decision, policy or plan" violating the provisions of the FLSA. *Mooney*, 54 F.3d at 1214, n.8. "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Simmons v. T-Mobile USA, Inc.*, No. 06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007).

Although the first stage of the *Lusardi* test is lenient, "certification is not automatic." *Novick v. Shipcom Wireless, Inc.*, No. 4:16-CV-0730, 2017 WL 1344961, at *5 (S.D. Tex. Apr. 12, 2017). Indeed, "notice is by no means mandatory," and "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." *Harris v. Fee Transportation Servs., Inc.*, 2006 WL 1994586, at *2 (N.D. Tex. May 15, 2006). Before granting conditional certification, courts typically require "substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. To make this determination, many courts—including this Court—consider whether (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims

and defenses asserted, and (3) those individuals want to opt in to the lawsuit. *Parker v. Silverleaf Resorts, Inc.*, No. 3:14-CV-2075-B, 2017 WL 1550522, at *8 (N.D. Tex. May 1, 2017).

2.   <u>There is no reasonable basis for believing that aggrieved individuals exist</u>.

Plaintiffs have provided no basis to credit the assertion that aggrieved individuals exist because they have identified no impermissible policy or practice.

a.   *No City policy or practice required Plaintiffs to work off the clock.*

Plaintiffs seek conditional certification for alleged unpaid work they performed "off the clock." Specifically, Plaintiffs allege that the Neighborhood Code Plaintiffs were required to answer their cell phones during meal breaks and were required to work at home. But the City has no improper policy. Plaintiffs have ignored two critical facts: (1) Plaintiffs bore the responsibility to accurately report all time worked; and (2) Plaintiffs were paid for all time reported, including all reported overtime.

First, the City did not require the Neighborhood Code Plaintiffs to perform any work before or after the end of their shift.[61] Neighborhood Code Plaintiffs were not required to take home their City-issued laptops or cell phones, and were permitted to leave their cell phones and laptops at their personal workstation in the field office.[62] If the Neighborhood Code Plaintiffs chose to work from home, they were instructed to report this time worked.[63]

Second, regarding alleged work performed during meal breaks, the City did not require the Neighborhood Code Plaintiffs to work during their meal breaks, including by answering their City-issued phones.[64] Instead, they were instructed to *not* work during this meal break and were

---

[61] App. 3-4 (Sweckard Dec. ¶ 14).
[62] App. 4 (Sweckard Dec. ¶ 15).
[63] App. 3-4 (Sweckard Dec. ¶¶ 12, 14); App. 43-44, 30, 37 (Palmer Dec. Ex. C-2, Palmer Dec. Ex. C-1 at pp.1, 8)
[64] App. 3 (Sweckard Dec. ¶ 11).; *see supra* at n. 52.

permitted to silence, ignore, or put away their phones.[65] If the Neighborhood Code Plaintiffs

chose to answer the phone or otherwise work during a meal break, they were instructed either to

extend the meal break by the amount of time worked (in order to receive a full one-hour,

uninterrupted break) or to report the time worked to the City.[66] Neighborhood Code Plaintiffs

have presented the Court with no evidence that they were required to work during a meal break.

The City would not be in violation of the FLSA just because the Neighborhood Code Plaintiffs

elected to work during their meal breaks and elected to not report this time. Critically, they have

presented no evidence refuting the City's written policies and procedures requiring Plaintiffs to

record *all* time worked. *See Valcho v. Dallas Cty. Hosp. Dist*., 574 F. Supp. 2d 618, 623 (N.D.

Tex. 2008) (denying conditional certification because plaintiff, relying "exclusively on the bare

allegations of her personal declaration, without any supporting evidence" failed to refute the

employer's evidence that "all nurses are required to report the time they work during meal-

periods to their supervisors, who in turn report this information to payroll personnel").[67]

Plaintiffs also ignore the Fifth Circuit's standard for determining whether a violation of

the FLSA regarding meal breaks occurred. Under Fifth Circuit's "predominant benefit" test, the

"critical question is whether the meal period is used predominantly or primarily for the benefit of

the employer or for the benefit of the employee." *Lacy v. Dallas Cowboys Football Club*, No.

3:11-CV-0300-B, 2012 WL 2795979, at *12 (N.D. Tex. July 10, 2012) (quoting *Bernard v. IBP,

Inc. of Neb.*, 154 F.3d 259, 264-66 (5th Cir. 1998)). Plaintiffs have not argued that meal periods

are predominantly for the City's benefit rather than the employees'. In fact, the evidence shows

---

[65] *Id.*

[66] *Id.* at ¶ 12.

[67] *See also Dudley v. Texas Waste Sys., Inc.,* 2005 WL 1140605, at *2 (W.D. Tex. May 16, 2005) (denying conditional certification because Plaintiff failed demonstrate the existence of a 'similarly situated' class of employees since "Plaintiff presents no evidence refuting Defendant's written policy that employees were admonished to take their lunch breaks" and testimony that if an employee worked during the lunch break, they were instructed to "advise management…so they can be compensated for that working time").

otherwise. The City imposed no restrictions on when Neighborhood Code Plaintiffs could take a meal break or how they could spend that meal break.[68]

Third, Plaintiffs have ignored the critical fact that they received compensation for *any work they reported as compensable*.[69] Under the FLSA, "[i]f the 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207.'" *Newton v. City of Henderson*, 47 F.3d 746, 747 (5th Cir. 1995). In *Newton*, the plaintiff had the duty to submit time reports showing any overtime hours worked but did not do so. *Id.* at 748. Because the employee did not "adhere to [the employer's] procedures for claiming overtime," the Court held that the plaintiff could not show that his employer had "violated the FLSA by paying him only for the hours claimed on his time sheets." *Id.*[70]

To be clear, where an employer has a reasonable process for an employee to report work time, the employer is not liable for non-payment if the employee fails to follow the established process. As explained by the Fifth Circuit, "[w]hen the employee fails to follow reasonable time reporting procedures the employee prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016).

Plaintiffs do not allege that the City failed to pay for time they reported. Rather, they claim the City should have somehow determined that they worked additional unreported time

---

[68] App. 3 (Sweckard Dec. ¶ 9).
[69] App. 27, 46-47 (Palmer Dec. ¶ 12 and Palmer Dec. Ex. C-3).
[70] *Accord Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) ("[W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work."); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (affirming holding that plaintiff "was estopped and could not profit from her own wrong in furnishing false data to the employer"); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (noting that employee's "failure to record claimed [uncompensated] time is fatal to a later claim for such [time]").

when they were alone and away from City property. But Plaintiffs ignore at least two City written policies and procedures that explicitly require employees to accurately report all time worked.[71] Plaintiffs also describe a sign in/sign out reporting system that simply was not used for payroll purposes. Instead, Plaintiffs used a positive time entry system and logged all hours worked in Lawson.[72] Accordingly, Plaintiffs have failed to meet their burden to provide any basis for concluding that the City has any improper policy or practice.

> b.   *Nonexempt Plaintiffs did not receive compensatory leave.*

The Motion alleges that Plaintiffs, including the nonexempt Plaintiffs, were "required" to take compensatory leave in lieu of overtime pay. In support of this contention, Plaintiffs cite to their declarations.

Where a defendant maintains lawful written policies, the only way a plaintiff can show a common policy to violate the FLSA is to establish that the employer instituted a "common or uniform practice . . . to not follow its formal, written policy." *Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 962 (W.D. Mich. 2009); *Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107-PJS-RLE, 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009) (denying conditional certification and notice, explaining "plaintiffs have failed to establish a colorable basis that . . .a policy-to-violate-the-policy exists"). Evidence that some managers violated the policy is not enough—the violations must be tied to a single decision, policy or plan that binds the putative class. *Hickson v. U.S. Postal Serv.*, 5:09-CV83, 2010 WL 3835887 *6 (E.D. Tex. July 22, 2010), *adopted*, 5:09-CV-83, 2010 WL 3835885 (E.D. Tex. Sept. 28, 2010). (denying conditional certification); *Andersen v. Wells Fargo Fin., Inc.*, No. 4:11-cv-00085-JAJ-TJS, 2012 U.S. Dist. LEXIS 23175, at *19-20 (S.D. Iowa Feb. 6, 2012) ("In the absence of any evidence

---

[71] *See* App. 43-44, 30, 37 (Palmer Dec. Ex. C-2,  Palmer Dec. Ex. C-1  at 1, 8).
[72] App. 25 (Palmer Dec. ¶ 6).

tending to show that Defendants routinely breached the FLSA's pay provisions, these deviations are case-specific and subject to variables, making them unfit for a collective action.").

The Neighborhood Code Plaintiffs have not provided the Court with any evidence, apart from their self-serving declarations, that they received compensatory leave. They have not pointed to any policy, memo, directive, or work instruction showing that any nonexempt Plaintiff was required to take, or did receive, compensatory leave. They have not presented any evidence refuting the City's clear policy mandating that compensatory leave is available only to exempt employees. They have not presented any evidence refuting their own pay and time records that conclusively show that the Neighborhood Code Plaintiffs never received compensatory leave, and instead, earned overtime at a rate of one-and-one-half of their regular rate for all hours they reported to have worked over 40. The only effort made by Plaintiffs is to claim that "the City required all [Code Compliance employees] to take one (1) hour off the second week of their pay period for every hour they worked in excess of forty (40) the first week of the pay period. For example, if a CCE worked forty-five (45) hours the first week of his pay period, (s)he was only permitted to work thirty-five (35) hours the second week of the pay period."[73] But this claim is not supported by Plaintiffs' time records.[74] There are no weeks in which any of the Plaintiffs worked a certain number of hours of overtime in one week and then worked that amount of hours less the following week.[75] Plaintiffs are thus unable to establish that an improper policy exists.

Thus, if the Court grants Plaintiffs' request to conditionally certify a class consisting of "all persons…who are and were employed by the City of Dallas as non-exempt employees…who

---

[73] P. App. 8, 14, 20, 27.
[74] App. 27 (Palmer Dec. ¶ 12).
[75] *Id.*

received compensatory time off in lieu of overtime," the Court would be granting a class that simply does not exist.[76] The City would have no names of potential plaintiffs to provide.

      3.      <u>The potential class members are not similarly situated in relevant respects.</u>

Plaintiffs have not met their burden to show that the proposed class members are similarly situated. To meet this requirement, Plaintiffs must show that the proposed class members are not just similarly situated, but that they are similarly situated "*in relevant respects given the claims and defenses asserted.*" *Parker*, 2017 WL 1550522, at *8 (emphasis added).

First, Plaintiffs' proposed class includes three exempt, salaried Plaintiffs who are completely distinct from the other 25 Plaintiffs. These three Plaintiffs, none of whom worked in the Neighborhood Code Division during the relevant period, are even distinct from one another. They each worked in different departments, in different positions, at different locations, for different managers, and held different work hours.[77] The allegation that the City required these Plaintiffs to take compensatory leave in lieu of overtime is nonsensical. Because these Plaintiffs were exempt, they were not eligible to earn overtime. *See, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001) (holding that employees are entitled to overtime unless one of the many exemptions apply). And pursuant to City policy, it was unquestionably proper for them to receive compensatory leave.[78] Not only is there no connection between the three exempt Plaintiffs, there are zero similarities between them and the 25 nonexempt Neighborhood Code Plaintiffs. For this reason alone, the Court should deny Plaintiffs' Motion.

Second, the Neighborhood Code Plaintiffs' allegations that individual supervisors or managers required employees to work off-the-clock are precisely the type of allegations that

---

[76] Personnel Rules Sec. 34-19 applies to Public Safety Employees and states that "[c]ompensatory leave in lieu of overtime pay may be granted to a nonexempt sworn employee of the police department at the request of the employee, subject to supervisory approval." This exception does not apply to any of the Plaintiffs.

[77] *See* App. 46-53 (Palmer Dec. at Exs. 3-5).

[78] App. 6-7 (Swekard Dec. Ex. A-1).

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR CONDITIONAL CERTIFICATION**                        **Page 17**

courts reject for conditional certification. Indeed, federal courts regularly deny conditional certification where the allegations arise from *exceptions* to lawful policies. *See, e.g.*, *Simmons v. T-Mobile USA, Inc.*, 2007 WL 21008, *6 (S.D. Tex. Jan. 24, 2007) (supervisors' independent refusal to upwardly amend overtime hours, which violated the written policy of the employer to pay overtime, did not indicate a common policy or plan of the employer, even when the employer discouraged employees from working overtime); *Griffith v. Wells Fargo Bank,* 2012 WL 3985093 (S.D. Tex. Sept. 12, 2012) (denying conditional certification of an off-the-clock claim); *MacGregor v. Farmers Ins. Exch.,* 2011 WL 2981466, *4 (D.S.C. 2011) (where "[a]lleged FLSA violations stem[ ] from the enforcement decisions of individual supervisors," collective treatment is not appropriate); *Saleen v. Waste Mgmt., Inc.,* 2009 WL 1664451, at *4 (D. Minn. 2009) (denying conditional certification at the notice stage and rejecting plaintiffs' "policy to violate the policy" claim).

Resolution of any proposed class members' claims will necessarily require individualized inquiries on essential factual issues, which defeats the purposes of the collective action procedure. *See, e.g.*, *Caballero v. Kelly Servs., Inc.,* 2015 WL 12732863 (S.D. Tex. Oct. 5, 2015) (plaintiffs' renewed motion for conditional certification denied because plaintiffs failed to substantiate their claim that they were pressured to work unrecorded and uncompensated overtime hours). In *Caballero*, the Court noted that such individualized inquiries would include the individual practices of each supervisor, communications of each supervisor with defendant's management regarding overtime practices, the effect of each supervisor's individual practices on the hours worked by each employee, and each employee's time-keeping practices. *Id.* at *7.[79]

---

[79] *See also Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 723 (S.D. Tex. 2014) (decertifying class as to employees whose claims were "not susceptible to proof through representative evidence"); *Jones v. Xerox Commercial Sols., LLC*, Civ. A. No. 4:13–cv–650, 2013 WL 5945652, at *6 (S.D. Tex. Nov. 6, 2013) (denying

As in *Caballero*, Plaintiffs' off-the-clock and compensatory leave claims in this case require individualized inquiries. These inquiries include the following: (a) names of any supervisors or managers who allegedly required a Plaintiff to work off the clock or could receive compensatory leave, (b) when and where a Plaintiff allegedly was told he was required to work off the clock or granted compensatory leave, (c) whether a Plaintiff ever complained to the City about these alleged practices, (d) whether a Plaintiff actually performed off-the-clock work, and (d) whether a Plaintiff actually received compensatory leave. The declarations offered by Plaintiffs provide scant, if any, information regarding these individualized inquiries. *See Smith v. Family Video Movie Club, Inc.*, 11-CV-1773, 2013 WL 1628176, at*8 (N.D. Ill. Apr. 15, 2013) (finding that supporting declarations contained "no details as to who 'required' the declarants to incur unpaid travel time or why Plaintiffs believed they were required to do so. Thus, even the basic answer to the question of whether and under what circumstances an employee was required to incur unpaid travel time would necessitate individual inquiry at the store level, if not the individual employee level."). Given this lack of detail, it is impossible to determine whether the City had a widespread practice of requiring off-the-clock work.

Third, the Neighborhood Code Plaintiffs cannot equate their personal work situations with those of the other Plaintiffs. Specifically, the Neighborhood Code Plaintiffs have not produced any evidence that they have personal knowledge or otherwise observed other Neighborhood Code Plaintiffs working in excess of 40 hours per work week or receiving compensatory leave. The autonomous nature of the Neighborhood Code Plaintiffs' job, and the fact they worked in different positions and districts, makes it impossible for Plaintiffs to attest to the work time of anyone else. Plaintiffs are merely asking the Court to *assume* that because they

---

certification where alleged violations were "not the result of a systemic policy," so "assessment of the[ ] issues necessitates an individual inquiry for each Plaintiff, thereby making a collective action inappropriate").

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR CONDITIONAL CERTIFICATION**                                        **Page 19**

claim to have worked in excess of 40 hours in a work week that other Plaintiffs must have as well.[80] There is no way for the Court to know, from the record, whether these Plaintiffs are actually similarly situated in any respect. *See Rogers v. Ocean Cable Grp. Inc.*, 2011 WL 6887154 (D.N.J. Dec. 29, 2011). In *Rogers*, the Court denied conditional certification for this reason. Plaintiffs, technicians and installers for a company that installs cable and television products, failed to show that the they were similarly situated to other potential plaintiffs because "the nature of the work performed [by] each technician is fairly autonomous throughout the day" and plaintiffs could not have personal knowledge of whether other technicians worked more than 40 hours in a week.[81] Accordingly, the Court should deny Plaintiffs' Motion.

**B.      In the Alternative, Plaintiffs' Proposed Class Should Be Limited.**

Conditional certification is not appropriate.  If, however, the Court grants conditional certification, the City requests the Court limit the scope of that class to employees who worked in the Neighborhood Code Division in the Code Compliance Department.

Courts have refused to extend certification to job classifications not held by the named plaintiffs where the evidence failed to establish the policy at issue affected individuals in the excluded job classification in a similar manner. *See Tolentino*, 716 F. Supp. 2d at 652; *Ryan v. Staff Care*, 497 F. Supp. 2d 820, 825 (N.D. Tex. July 6, 2007) (limiting class to employees holding the same three positions as the named plaintiffs).  Courts frequently cite dissimilarities among different locations as a reason for denying a motion for conditional certification or limiting the scope of the collective action.  *See, e.g.*, *Aufleger v. Eastex Crude Co.*, 2006 WL

---

[80] Plaintiffs' Motion claims that the City required Plaintiffs "—**and employees in other departments**—to take comp time per the City's illegal scheme." *See Motion* at 5 (emphasis in original). To support this proposition, the Motion cites to the declarations of the four named Plaintiffs, all of whom worked in the Neighborhood Code Division in the Code Compliance Department. These Plaintiffs have no personal knowledge of other departments in the City and cannot possibly attest to the same.

[81] *Id.* at *4 (further holding that plaintiffs failed to cite specific policy or supervisor who instituted alleged policy that technicians could only bill for 30 minutes of prep time in the morning, and failed to provide any evidence that any other technician was required to follow this alleged improper policy).

2161591, at *1 (N.D. Tex. July 31, 2006) (denying conditional certification where plaintiffs had limited, if any, knowledge of other locations); *Straka v. Methodist Dallas Med. Ctr. Auxiliary*, 2018 WL 1611865, at *6 (N.D. Tex. Apr. 3, 2018) (limiting scope of conditional certification to hospitals about which plaintiffs had personal knowledge).[82]

Here, the three exempt Plaintiffs—and the departments in which they worked—should not be included in any class. None of the allegations presented to the Court in the Motion apply to exempt employees. All of the purported evidence submitted by Plaintiffs relates to the Neighborhood Code Division. Plaintiffs have failed to allege the existence of any improper policy or practice that affected exempt employees, such as Plaintiffs Jones, Sustatia, and Jackson. Therefore, if the Court grants conditional certification, the class should be limited only to those employees who worked in the Neighborhood Code Division.

**C.    Plaintiff's Proposed Notice and Procedure Are Improper.**

As explained above, conditional certification is not appropriate in this case. If, however, the Court grants conditional certification, the Court should revise Plaintiffs' proposed notice and limit the proposed opt-in procedure. Limitations on the content and extent of communications with putative plaintiffs are encouraged and even required.  In *Hoffman-La Roche*, the Supreme Court noted that judicial oversight can prevent potential misuse of collective actions. *Id*. at 171-72.  Here, Plaintiffs' proposed notice and opt-in procedure are improper for several reasons.

1.    The relevant time period should extend back no more than three years.

Plaintiffs propose to send notice and consent form to "all persons who are employed, or were formerly employed" by the City "during the past three (3) years through the final date of the disposition of this action." Motion at 1. The statute of limitations continues to run until the

---

[82] *See also Harper v. Lovett's Buffet, Inc*., 185 F.R.D. 358, 363 (M.D. Ala. Jan. 25, 1999) (limiting scope of collective action to  single location where employees "at different restaurants, in different states, for different managers, and most likely, in quite different working conditions")

filing of an opt-in consent.  29 U.S.C. § 256.  Thus, the proper time period is the three-year period

prior to the date the Court decides this Motion.  *See, e.g.*, *McDonald v. Worldpac, Inc.*, No. 3:13-

CV-4965-K, 2015 WL 12753533, at *5 (N.D. Tex. Sept. 8, 2015) ("The notice period should be

for the three-year period prior to the date of this Order conditionally certifying the class.").

   2. <u>Dissemination of the notice should be limited to U.S. first-class mail only</u>.

  Plaintiffs ask that the notice and consent forms be sent to potential plaintiffs "by first

class mail and by electronic mail," posted on the City's website and worksites, including on its

"lunch room bulletin boards (or alternatively on the bulletin boards where employee-rights or job

notices are posted)," and ask permission to make automated telephone calls to potential

plaintiffs. Motion at 16, 17, 19.  This request is overly broad. As Judge Fitzwater recently

explained, "Judges in this district have found that mailing notice [to potential class members] is

an adequate means of alerting potentially interested Plaintiffs." *Arceo v. Orta*, 296 F. Supp. 3d

818, 826 (N.D. Tex. 2017) (Fitzwater, C.J.).[83] Moreover, it is particularly inappropriate and

unnecessary for the City to post any notice or consent form in this case. *See, e.g. Redus v. CSPH,*

*Inc.*, 2017 WL 2188777, at *3 (N.D. Tex. May 17, 2017) (mailing notice to potential plaintiffs,

rather than also posting them at all of defendant's store locations, was sufficient to provide the

potential plaintiffs with notice of the suit).[84] Plaintiffs have not articulated any reason why

sending the notice by U.S. mail is not sufficient to inform the potential plaintiffs of their right to

---

[83] *See, e.g.*, *Altiep v. Food Safety Net Services, Ltd.*, No. 3:14-CV-00642-K, 2014 WL 4081213, at *6 (N.D. Tex. Aug. 18, 2014) (denying request to post notice and concluding that "[m]ailing the notice to potential plaintiffs offers adequate notice of their opportunity to participate in this case"); *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 920 (S.D. Tex. 2010) ("Defendant need not post the notice and consent forms in a place where potential class members are likely to view them, as Plaintiff requests.  Notice by mail is sufficient under the circumstances of this case.").

[84] Plaintiffs ironically request notice to be posted on lunch room bulletin boards at various worksites, but potential plaintiffs take lunch breaks on their own and outside City offices, so it would be highly unlikely proposed plaintiffs would see it. Also, if potential class members were to see the notice at worksites, they might direct questions to management and seek advice regarding the lawsuit, thereby placing the City in a difficult position that can easily be avoided by mailing notices instead.  Lastly, a posting by the City—especially on its website where members of the public regularly visit—implies that the City endorses the lawsuit, which it does not.

join this suit.  For instance, they have not shown that potential plaintiffs cannot receive notice by mail or that they would be unable to respond to mailed notices.  Accordingly, the Court should order distribution by U.S. mail only.  *See Altiep*, 2014 WL 4081213, at *6 (permitting distribution by mail only and noting that "Plaintiffs have shown no reason that sending a letter to a potential plaintiff's last known address would provide inadequate notice").

3.    <u>The City should not be required to disclose personal information for potential class members</u>.

Plaintiffs request that the Court order the City "to supply a computer readable file with the following information for all opt-in plaintiffs: names, last known mailing addresses, alternate addresses, all telephone numbers (work and personal), all known email addresses (work and personal), dates of birth, social security numbers, and dates of employment for all potential class members employed at any time during the three years preceding the grating of this Motion to the present." *Id.* at 18.[85] Names and addresses are sufficient to make sure the potential plaintiffs receive notice of this case.  Courts in this district have consistently held that providing Plaintiffs with additional information, including the individuals' email addresses, phone numbers, social security numbers and dates of birth, unnecessarily invades those individuals' privacy. *See, e.g., Nguyen v. Versacom, LLC*, No. 3:13-CV-4689-D, 2015 WL 1400564, at *13 (N.D. Tex. Mar. 27, 2015) (Fitzwater, C.J.) ("Consistent with its prior practice, the court concludes that the need for compelled disclosure of prospective class members' telephone numbers, email addresses, and social security numbers is outweighed by their privacy interests, and that there is no apparent reason to conclude that sending a letter to a person's last known address will be inadequate.").

---

[85] As a practical matter, the City may not have all of the requested information

Plaintiffs have not offered any reason why names and addresses are insufficient, so the Court should not require Defendant to produce additional contact and personal information.[86]

4. <u>Plaintiffs should not be allowed to send subsequent mailings</u>.

Plaintiffs request that the notice be sent to proposed plaintiffs "twice, both via first class mail and via email." *Id.* The City requests that Plaintiffs' written communications with potential class members be limited to sending the approved notice via U.S. first-class mail on only one occasion, except in a case where a notice is returned due to an incorrect address. This limitation is appropriate because court-authorized notice is intended to accomplish *notice*; once the members of the prospective collective class are aware of the litigation, "reminders" such as subsequent mailings of the notice serve no legitimate purpose. *See, e.g., Sharpe v. APAC Customer Servs., Inc.*, No. 09-cv-329-bbc, 2010 WL 1292154, *2 (W.D. Wis. Mar. 29, 2010) (limiting plaintiff's written communications with potential class members to a one-time mailing of the approved notice). The Supreme Court held that notice procedures "must be scrupulous to respect judicial neutrality . . . and take care to avoid even the appearance of judicial endorsement of the merits of the action." 493 U.S. at 174. A single mailing will ensure that members of the prospective class receive formal court-authorized notice of these proceedings. Any further communication with potential plaintiffs would implicitly involve the Court in the encouragement of litigation, which *Hoffman-La Roche* certainly does not contemplate. 493 U.S. at 181 (Scalia, J., dissenting) ("'Stirring up litigation' was once exclusively the occupation of disreputable lawyers, roundly condemned by this and all American courts."). Any approved notice should be issued on one occasion and not followed by any other correspondence, including subsequent mailings.

---

[86] *See Lopez v. Bombay Pizza Co*., No. Civ. A. H-11-4217, 2012 WL 5397192, at *3 (S.D. Tex. Nov. 5, 2012) (declining to require defendant to produce telephone numbers because plaintiff "has not demonstrated any need for the additional information at this stage of this case").

5.      <u>The Notice should explain the potential plaintiffs' responsibilities</u>.

The notice should explain that potential plaintiffs may be asked to participate in discovery, answer questions, testify in a deposition and at trial, among other obligations related to this litigation. *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 525 (N.D. Tex. 2014) (Fitzwater, C.J.) (holding that the notice "should include language that individuals joining the lawsuit may be required to give a deposition, respond to written discovery, and testify in court") (internal quotations omitted); *see, e.g., Russell v. Illinois Bell Tel. Co.,* 575 F. Supp. 2d 930, 939 (N.D. Ill. 2008) (accepting proposed language that "While the suit is proceeding, you may be required to provide information, sit for depositions, and testify in court.").

6.      <u>Plaintiffs' proposed 60-day opt-in period is too long</u>.

The City objects to the proposed 60-day opt-in period. *Id.* at 16. Forty-five days is more than sufficient time for a notice period in this case. *See McDonald*, 2015 WL 12753533, at *5 (allowing 45-day opt-in period); *accord, e.g., Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 501 (D. Neb. 2009) ("Forty-five days is sufficient time for putative plaintiffs to consider their options and, if desired, seek the assistance of outside counsel in deciding whether to join this lawsuit."); *Williams v. Long*, 585 F. Supp. 2d 679 (D. Md. 2008) (30 days)).

## IV.   CONCLUSION

For the foregoing reasons, the City requests that the Court deny Plaintiffs' Motion. In the alternative, the City requests that the Court limit the conditionally certified class to employees who worked in the Neighborhood Code Division within the Code Compliance Department.  If the Court grants the Motion in whole or in part, the City requests that that the Court modify Plaintiffs' proposed notice and notice procedure as described above.  The City further requests all other and further relief to which it is justly entitled.

Respectfully submitted,

*/s/ John B. Brown*
John B. Brown
Texas Bar No. 00793412
john.brown@ogletreedeakins.com
Jamie Ashton
Texas State Bar No. 24087211
jamie.ashton@ogletreedeakins.com

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
500 Preston Commons
8117 Preston Road
Dallas, Texas  75225
(214) 987-3800
(214) 987-3927 (Fax)

And

Larry E. Casto
City Attorney
Texas State Bar No. 03995000
larry.casto@dallascityhall.com
Ayeh B. Powers
Executive Assistant City Attorney
Texas State Bar No. 24031848
ayeh.powers@dallascityhall.com
Sarah E. Mendola
Senior Assistant City Attorney
Texas State Bar No. 24057030
sarah.mendola@dallascityhall.com
Nicholas D. Palmer
Senior Assistant City Attorney
Texas State Bar No. 24067814
nicholas.palmer@dallascityhall.com

CITY ATTORNEY'S OFFICE
1500 Marilla Street, Room 7D North
Dallas, Texas 75201
Telephone: (214) 670-3519
Facsimile: (214) 670-0622

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that on July 16, 2018, I electronically transmitted this document to the Clerk of Court using the ECF system of filing, which will transmit a Notice of Electronic Filing to all counsel of record in this matter.


                                         */s/ John B. Brown*
                                         John B. Brown