# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRANCE BASS, BARRY BOYD, ELIZABETH LOPEZ, and JOSEPH SCOTT, Individually and on Behalf of All Others Similarly Situated,<br>Plaintiffs,<br><br>v.<br><br>THE CITY OF DALLAS and JOHN DOES 1-5,<br>Defendants. | § § § § § § § § § § § § | CASE NO. 3:17-CV-3330-S |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Conditional Certification [ECF No. 64]. For the following reasons, the Court grants in part and denies in part the Motion.

### I. BACKGROUND

Pursuant to Special Order 3-249, this case was transferred from the docket of Judge Sam R. Cummings to the docket of this Court on March 21, 2018.

This action arises out of alleged violations of the Fair Labor Standards Act ("FLSA") and Title Two of the Texas Labor Code ("TLC"). Plaintiffs were employees of the City of Dallas ("Defendant").[1] Compl. ¶ 29. Terrance Bass, Barry Boyd, Elizabeth Lopez, and Joseph Scott (collectively, "Named Plaintiffs") sue on behalf of employees working "in different positions and for a variety of different departments." *Id.* ¶ 30. The Named Plaintiffs all worked in the Neighborhood Code Division in the Code Compliance Department. Def.'s Resp. 20; *see also* Compl. ¶¶ 63, 78, 93, 107.

---

[1] "The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as John Does 1-5, inclusive, are currently unknown to the Named Plaintiffs[.]" Compl. ¶ 25. For purposes of this Order, the Court refers only to the City of Dallas when using the designation "Defendant."

Plaintiffs allegedly worked more than 40 hours per week. Compl. ¶ 31. They claim that rather than compensating them with an overtime premium, Defendant required them to take "comp time." *Id.* ¶ 32. This purported "'comp time' scheme" required all Plaintiffs to take one hour off the second week of their biweekly pay period for every hour they worked in excess of 40 during the first week of the pay period. *Id.* ¶ 33. For example, if a Plaintiff worked 45 hours the first week of the pay period, he or she allegedly was required to work no more than 35 hours during the second week of the pay period. *Id.* Further, Plaintiffs allegedly were required to use their comp time in the same pay period in which it accrued. *Id.* ¶ 35.

Non-exempt employees of Defendant's code compliance department ("CCEs") were assigned to different districts throughout the City of Dallas. *Id.* ¶ 38; *see also* Pls.' Mot. for Conditional Certification ("Pls.' Mot.") 2 (defining "CCEs"). CCEs were given one hour per workday for a meal break. Compl. ¶ 40. Defendant allegedly did not pay CCEs for their meal break periods. *Id.* ¶ 43. CCEs recorded their hours by writing and initialing the time they began and ended their shifts on a sign in/sign out sheet. *Id.* ¶ 41. CCEs were paid every two weeks and were compensated on an hourly basis. *Id.* ¶¶ 45-46.

Plaintiffs allege that Defendant issued cellphones to CCEs and required that CCEs remain accessible via cellphone throughout the workday. *Id.* ¶¶ 48-49. According to Plaintiffs, Defendant required that CCEs remain accessible via cellphone during meal break periods. *Id.* ¶ 50. CCEs allegedly answered phone calls and had work-related discussions lasting between five to forty-five minutes per meal break period. *Id.* ¶ 51. Plaintiffs allege that CCEs were not paid for working during their meal break periods. *Id.* ¶¶ 53-54.

Plaintiffs also allege that Defendant issued CCEs laptops and required CCEs to respond to work-related emails and finish their caseload. *Id.* ¶¶ 55-56. To do so, CCEs claim they worked

2

from home. *Id.* ¶ 57. Plaintiffs contend that Defendant knew CCEs worked from home because each email had a time stamp indicating when it was sent, and each code violation case had a time stamp indicating when it was uploaded or completed. *Id.* ¶ 58. CCEs worked at home five to ten hours per workweek. *Id.* ¶ 59. Defendant allegedly did not compensate CCEs for these hours. *Id.* ¶¶ 61-62.

Plaintiffs allege that the above conduct violates federal and state overtime and minimum wage laws. Named Plaintiffs seek to certify two collectives. The first, the FLSA Overtime Collective, is defined as follows:

> [A]ll persons (including, but not limited to, all-non-exempt employees in Defendants' Code Compliance Department) who are and were employed by the City of Dallas as non-exempt employees during the past three (3) years through the final date of the disposition of this action who received compensatory time in lieu of overtime at a 1:1 "straight time" ratio for hours worked in excess of forty (4) hours per workweek[.]

Pls.' Mot. 1; Compl. ¶¶ 7, 123.

The second, the FLSA Minimum Wage Collective, is more narrowly defined:

> [A]ll persons who are and were employed by the City of Dallas as inspectors, supervisors, and neighborhood code representatives employed in Defendants' Code Compliance Department during the past three (3) years through the final date of the disposition of this action who were required to work off-the-clock, including during their meal break periods and while at home.

Pls.' Mot. 1; Compl. ¶¶ 7, 134.

## II. LEGAL STANDARD

The FLSA's overtime provisions authorize an employee to bring suit against his or her employer on behalf of both him or herself and other "similarly situated" employees. 29 U.S.C. § 216(b). To bring a representative action, the plaintiffs must be similarly situated to one another. *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (citing *Basco v. Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709, at *3 (E.D. La. July 2, 2004)).

3

Under the *Lusardi*[2] approach, which has been followed by courts in the Fifth Circuit, the similarly situated analysis proceeds in two stages. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). The first stage is referred to as the notice stage. *Id.* At the notice stage, the Court relies mainly on the allegations set forth in pleadings and affidavits and uses a fairly lenient standard to determine whether notice of the action should be given to potential class members. *Id.* at 1213-14; *see also Reyes v. Tex. EZPawn, L.P.*, Civ. A. No. V-03-128, 2007 WL 101808, at *2 (S.D. Tex. Jan. 8, 2007). If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in to the collective action. *Id.* The action proceeds as a representative action throughout discovery. *Id.*

The second stage, known as the certification stage, is triggered when the defendant files a motion for decertification after discovery is largely complete. *Gomez v. Mi Cocina Ltd.*, Civ. A. No. 3:14-CV-2934-L, 2017 WL 3334106, at *3 (N.D. Tex. Aug. 4, 2017). At this stage, the court has more information and makes a factual determination as to whether the collective action members are similarly situated. *Id.* The standard for proceeding as a collective action at the certification stage is more stringent than at the notice stage. *Id.*

### III. ANALYSIS

Plaintiffs argue that conditional certification of the FLSA Overtime Collective and FLSA Minimum Wage Collective is appropriate because they have met their minimal burden in demonstrating that the Named Plaintiffs, along with the putative collective members, together were victims of a common policy or plan that resulted in widespread, systematic violations of the overtime provisions and minimum wage provisions of the FLSA. *See* Pls.' Mot. 11.

---

[2] *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

4

At the notice stage, in order for the Court to grant conditional certification, there must be "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8 (citation omitted). In making this determination, the Court will consider whether "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Roberts v. S.B. S. Welding, L.L.C.*, 140 F. Supp. 3d 601, 605 (N.D. Tex. 2015) (quoting *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010)).

Because a court often has only minimal evidence at the notice stage, the Court's decision is "usually based only on the pleadings and any affidavits which have been submitted." *Id.* (quoting *Tolentino*, 716 F. Supp. 2d at 647). "Courts employ a lenient standard during the first stage, and the analysis typically results in the conditional certification of a representative class." *Id.* (citing *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 668 (N.D. Tex. 2007)). However, "a 'factual basis for the allegations must be presented, and there must be a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency.'" *Id.* (quoting *Tolentino*, 716 F. Supp. 2d at 647)). At the notice stage of a collective action, courts do not engage in a merits-based analysis. *See Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 767 (N.D. Tex. 2013).

As to the first and third prongs of the analysis, 34 individuals, including Named Plaintiffs, have opted in to the collective action. *See* ECF Nos. 9-11, 15-16, 19, 22, 24-26, 28, 30, 32, 34, 36, 38, 41-42, 46, 49, 51, 55, 57, 59, 61-62, 75, 77-78, 81-82, 87, 92. This evidence sufficiently demonstrates that aggrieved individuals exist and want to opt in to the lawsuit. *See, e.g., Straka v.*

*Methodist Dall. Med. Ctr. Auxiliary*, Civ. A. No. 3:16-CV-2192-B, 2018 WL 1611865, at *4, *6 (N.D. Tex. Apr. 3, 2018) (granting conditional certification where seven other individuals opted in); *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 769 (S.D. Tex. 2015) (granting conditional certification where nine others opted in).

To satisfy the second prong, the Named Plaintiffs must demonstrate that they are similarly situated to the potential collective action members that they seek to represent. *Roberts*, 140 F. Supp. 3d at 606. "[P]otential class plaintiffs are considered 'similarly situated' to the named plaintiffs if they are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Id.* at 606-07 (quoting *Tolentino*, 716 F. Supp. 2d at 649-50). "The positions need not be identical but similar." *Id.* at 607 (quoting *Tolentino*, 716 F. Supp. 2d at 649-50). "Workers can be similarly situated despite different job responsibilities, unless those distinctions 'affect . . . the facts that are material to plaintiffs' claim.'" *Id.* (quoting *Behnken v. Luminant Mining Co., LLC*, 997 F. Supp. 2d 511, 522 (N.D. Tex. 2014)). The relevant inquiry for the Court is whether "there is . . . 'some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *Id.* (quoting *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 720 (S.D. Tex. 2014)).

With respect to the city-wide FLSA Overtime Collective, Plaintiffs allege that the Named Plaintiffs are similarly situated to potential plaintiffs because "the City implemented its illegal comp time policies and practices and applied them to all non-exempt, City employees, regardless of their specific rank, rate of pay, assignment, or any other individualized factor." Pls.' Mot. 11. "Plaintiffs are similarly situated to, and representative of, these employees, all of whom were subject to the same time-reporting and pay practices with respect to comp time that failed to compensate them of all hours worked throughout the operative time period." *Id.*

6

The Court declines to exercise its discretion to conditionally certify a city-wide collective class of all non-exempt employees. The City employees approximately 13,000 people working in 33 different departments. *See* Def.'s Resp. 2. The Named Plaintiffs all work in the Neighborhood Code Division in the Code Compliance Department. *Id.* at 20 n.80; *see also* Compl. ¶¶ 63, 78, 93, 107. In support of their allegations, the Plaintiffs submitted declarations from the four Named Plaintiffs, as well as declarations from Michael Jones, a Coordinator in the City's Information Technology Department, and Leticia Sustatia, a Supervisor III in the City's Police Department, Communications Division. *See* Pls.' App. 006-35. However, both Jones and Sustatia are exempt, salaried employees. *See* Def.'s Resp. 6; see also Def.'s App. 28, 55-56. Because they are exempt from FLSA's overtime provisions, these Plaintiffs have no conceivable claim for FLSA overtime violations. Moreover, in their respective declarations, they testify only to the employment policies and practices applicable to other employees in their same positions, not their entire department or division. *See* Pls.' App. 030-35. Plaintiffs offer only assumptions and speculation as to the job requirements and pay provisions of any non-exempt employee outside of the Code Compliance Department. The Court finds that Plaintiffs have not met their burden and, therefore, will limit conditional certification of the FLSA Overtime Collective to only non-exempt employees in the Code Compliance Department.

Turning to the FLSA Minimum Wage Collective, Plaintiffs contend that the Named Plaintiffs are substantially similar to potential plaintiffs because they "had similar job duties and were not fully paid for all of the hours that they worked because they performed essential tasks during 'off-the-clock' times, which was common to all of the collective members." Pls.' Mot. 11-12. In addition, Plaintiffs allege that "all of the inspectors, supervisors, and neighborhood code

7

representatives were subject to the City's illegal comp time schemes." *Id.* at 12. The declarations from the Named Plaintiffs support these allegations. *See* Pls.' App. 006-29.

The Court finds that Plaintiffs have met their lenient burden of establishing there is some factual nexus which binds the Named Plaintiffs and the potential class members together as victims of a particular alleged policy or practice. Differences in job responsibilities, standing alone, do not "render the three categories of workers dissimilarly situated." *Roberts*, 140 F. Supp. 3d at 607. "Rather, it is sufficient that 'they were compensated under the same regimen' allegedly 'infected by discrimination,' even if 'their duties may have differed.'" *Id.* at 607-08 (quoting *Aguilar v. Complete Landsculpture, Inc.*, No. Civ. A. 3:04-CV-0776-D, 2004 WL 2293843, at *4 (N.D. Tex. Oct. 7, 2014). Therefore, the Court will conditionally certify the FLSA Minimum Wage Collective.

Having determined that conditional certification is appropriate, the next consideration is notice. Defendant has raised several objections with respect to Plaintiffs' proposed notice and opt-in procedure. Defendant's objections are denied at this time. In light of the Court's ruling, the Court orders the parties to confer regarding the proposed notice and opt-in procedure within 14 days of the date of this Order.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's Motion to Conditionally Certify. The Court conditionally certifies the FLSA Overtime Collective Action, but only to the extent that it applies to non-exempt employees working in the Code Compliance Department, not city-wide. The Court also conditionally certifies the FLSA Minimum Wage Collective Action. At this time, the Court denies Defendant's objections to Plaintiffs' proposed

notice, and orders the parties to confer regarding the proposed notice and opt-in procedure within 14 days of this Order.

**SO ORDERED.**

SIGNED April 24, 2019.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**